UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND

SCOOP REAL ESTATE, L.P.,

     Plaintiff,

v.             Case No. 8:10-CV-241-T-17MAP

EFG BANK f/k/a EFG PRIVATE BANK SA and
D&E UNIT TRUST ASSOCIATES,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

   This case emanates from a Securities and Exchange Commission enforcement action aimed at dealing with the aftermath of a massive ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager.[1] The receiver appointed in that action, Burton W. Wiand ("Wiand") has sued numerous individuals and entities that he claims have wrongfully or improperly received funds or other proceeds directly or indirectly traceable from investors in the hedge funds, like EFG Bank ("EFG") and D&E Unit Trust Associates ("D&E"), demanding the return of their "false profits" under the same two theories: the Florida Uniform Fraudulent Transfer Act ("FUFTA"; *see* Fla. Stat. 726.101, *et seq.*) and unjust enrichment. Further, in this action, Wiand seeks recovery of each and every distribution received by EFG and D&E, asserting that recovery

---

   [1] *See Secs. and Exch. Comm'n v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM.

is not limited to recovery of false profits in light of the red flags that EFG and D&E knew or should have known. EFG has now moved to dismiss the second amended complaint ("complaint") against it pursuant to Rule 12(b)(6) (doc. 33) claiming a FUFTA claim cannot be brought by Wiand, since he is not a creditor of the entity that made the allegedly fraudulent transfer; that the Hedge Funds were the alter egos of Nadel; that EFG was a "mere conduit" for its customer, and therefore is not a transferee under FUFTA; that Wiand's claims are barred by the *in pari delicto* doctrine; that Wiand has failed to plead fraud with particularity as required by Rule 9(b); that Wiand's claim for return of principal fails as a matter of law because a return of principal constitutes reasonably equivalent value; and that the existence of an investment contract between EFG and the Viking Fund bars Wiand's unjust enrichment claim. After consideration, I recommend the motion be denied for the reasons set forth below.[2]

*A. Background*

On January 21, 2009, the district judge in the enforcement action appointed Wiand as the receiver for various entities in receivership and directed him, *inter alia*, to "institute such actions and legal proceedings, for the benefit and on behalf of the Defendants and Relief Defendants and their investors and other creditors as the Receiver deems necessary…provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute[s] § 726.101, et seq. or otherwise, rescission and restitution…" *Secs. and Exch. Comm'n v. Nadel et al.*, No. 8:09-cv-87-

---

[2] Per 28 U.S.C. § 636 and Local Rule 6.01(b), the district judge referred these matters to me for a report and recommendation.

T-26TBM, doc. 8 at 2-3.[3] Following those instructions, Wiand initiated this action on January 20, 2010, to recover money transferred to EFG and D&E from one of the receivership entities, asserting claims under FUFTA and for unjust enrichment.

The relevant details of the money transfers at issue are straightforward. EFG, a private Swiss banking subsidiary of EFG International, located in Zurich, made investments in Viking Fund, LLC ("Viking") on behalf of one of its private banking customers. The complaint sets forth that EFG and D&E made the following investments in Viking: $300,000 on October 1, 2003, $300,000 on October 31, 2003, $125,000 on November 26, 2003, $250,000 on December 30, 2003, $100,000 on January 30, 2003, $250,000 on July 30, 2004, $150,000 on November 29, 2004, and $100,000 on January 28, 2005 (doc. 26, Exhibit A). EFG and D&E's total deposits with Viking were $1,575,000.00. However, in October 2006, EFG and D&E transferred $257,622,92, out of Viking, such that their total deposits were reduced to $1,317,377.08. EFG and D&E received a distribution from Viking in the amount of $2,416,053.57 on April 11, 2007 (doc. 26, Exhibit A). In counts I and III of the second amended complaint, Wiand seeks recovery of the total deposits in the amount of $2,416,053.57, and in counts II and IV, Wiand seeks recovery of false profits in the amount of $1,098,676.49 that EFG and D&E received in excess of their investments. EFG maintains that pursuant to the Swiss banking laws, it cannot disclose the identity of its customer absent a court order from a Swiss court.

B. *Rule 12(b)(6) standard*

The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in

---

[3] The district court judge reappointed Wiand on June 3, 2009. *See* 8:09-cv-87-T-26TBM, doc. 140.

detail the facts upon which he bases his claim. Instead, all that ordinarily is required is that the claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007) citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2). While a plaintiff attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss per Rule 12(b)(6), the complaint must allege sufficient facts, which are assumed to be true, to state a facially plausible claim, namely, one that allows the court to draw the reasonable inference that the defendant is liable for the misconduct averred. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

### C. Discussion

#### 1. FUFTA

##### a) statutory requirements/ standing

EFG argues the FUFTA claims fail to state claims upon which relief may be granted because a FUFTA claimant must allege he has a "claim" which qualifies him as a "creditor" of the entity or individual who is transferring or attempting to transfer funds to thwart the creditor's attachment. EFG posits that an equity receiver may not pursue fraudulent transfer claims owned by the creditors of the receivership entities, as only the creditors have standing to pursue claims under the FUFTA statute. However, consistent with FUFTA, the complaint alleges facts showing that Wiand, the receiver, sues on behalf of each of the Hedge Funds; that each of the

Hedge Funds has claims against and is thus a creditor of Nadel; that Nadel is the debtor; and that Nadel is the transferor under FUFTA. Hence, the complaint explicitly identifies the receivership entities as creditors, the wrongdoer, Nadel, as the debtor, and the creditor's claims against the debtor arising from the ponzi scheme perpetrated by the debtor, Nadel, through the creditors. *See* doc. 26, ¶¶ 17-18, 26, 33, 40, 46, 52, 59, 82-93, 94-103.

In describing the scheme, the complaint alleges that Nadel improperly and wrongfully diverted money invested with the Hedge Funds by causing those entities to make transfers to pay "fees" and to pay purported investment profits and principal redemptions to investors, including EFG and D&E, to perpetuate his ponzi scheme for the benefit of himself and others. *Id*. The complaint further alleges Nadel effected the transfers through his control of the Hedge Funds, and it is from Nadel's conduct that claims arose by each Hedge Fund against Nadel for breach of fiduciary duty, fraud, conversion, and/or other violations of law. *See* doc. 26, ¶¶ 31-33, 38-40, 64-66, 73-77, 94-103. Thus, the allegations establish that each Hedge Fund is a "creditor" of Nadel and that Nadel is a "debtor" as defined under FUFTA.

Courts have recognized that when a ponzi scheme's perpetrator diverts money that investors intended to invest with a receivership entity, the entity is harmed, even if the entity is controlled by the scheme's perpetrator and used exclusively to perpetrate the scheme.[4] For

---

[4] *See generally Knauer v. Jonathon Robert Fin. Group,* 348 F.3d 230, 235 (7th Cir. 2003) ("As long as an entity is legally distinct from the person who diverted funds from the entity, a receiver for the entity has standing to recover the removed funds."); *Goldberg v. Chong*, No. 07-20931-CIV, 2007 WL 2028792, *4 (S.D. Fla. July 11, 2007) ("TEGFI [a receivership entity], as a creditor alleging a claim against a debtor, has standing to bring a FUFTA claim against Defendants [recipients of receivership entity money or proceeds]. The Receiver, having been so authorized by the Court, has standing to assert claims on TEGFI's behalf"); *Quilling v. Grand St. Trust,* No. 3:04-cv-251, 2005 WL 1983879, *5 (W.D.N.C. Aug. 12, 2005) (finding receiver had standing to assert fraudulent transfer claims on behalf of corporate entities owned or

example, in *Scholes v. Lehmann*, the court noted that "the appointment of the receiver removed the wrongdoer from the scene" such that the receivership entities were no longer the ponzi scheme principal's "evil zombies." 56 F.3d 750, 754 (7th Cir. 1995). Freed from the principal's "spell" the entities "became entitled to the return of the moneys – for the benefit not of [the principal] but of innocent investors – that [the principal] had made the [entities] divert to unauthorized purposes." *Id.* In finding that the receiver had standing to bring fraudulent transfer claims, the *Scholes* court stated:

> Now that the corporations created and initially controlled by [the ponzi scheme principal] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [the principal].

*Id.* at 755. Wiand's allegations describe this type of scheme: he alleges Nadel, as perpetrator, diverted funds and that the receivership entities were harmed (doc. 1, ¶¶ 107-113).

Courts have consistently allowed receivers to file similar FUFTA "clawback" causes of action. *See generally Dillon v. Axxsys, Int'l, Inc.,* 185 Fed. App'x 823, 830 (11th Cir. 2006) (finding that once the principals decided to use the plaintiffs' money for non-business purposes, i.e. transferring assets to their own account, the plaintiffs became creditors and possessed a viable claim according to FUFTA.); *Warfield v. Byron,* 436 F.3d 551, 554-55 (5th Cir. 2006) (allowing

---

controlled by ponzi scheme operator from whom assets were fraudulently transferred); *Marwil v. Farah,* No. 1:03-CV-0482-DFH, 2003 WL 23095657, *7 (S.D. Ind. Dec. 11, 2003) (quoting *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (finding receiver, as representative of receivership entity, had standing to bring equitable disgorgement claim arising from fraud on receivership entity that Church operated to receivership entity's damage); *Obermaier v. Arnett*, No. 2:02-cv-111-FTM29DNF, 2002 WL 31654535, *3 (M.D. Fla. Nov. 20, 2002) (holding receiver could assert fraudulent transfer and unjust enrichment claims against beneficiaries of alleged ponzi scheme to redress injuries to receivership entities).

receiver to bring UFTA claims against individuals and entities to recover receivership assets where ponzi scheme operator caused receivership entities to effect transfers); *Troelstrup v. Index Futures Group, Inc.*, 130 F.3d 1274, 1277 (7th Cir. 1997) citing *Scholes, supra,* 56 F.3d at 753-54 (recognizing that "receiver, who had also been appointed the corporations' receiver, had standing to sue on behalf of the corporations, because they were entitled to the return of the money that the defrauder had improperly diverted from them"); *Scholes, supra,* 56 F.3d at 753-54 (7th Cir. 1995) (finding receiver Scholes had standing to bring fraudulent conveyance action against investors); *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.,* Nos. 8:05-cv-1856-T-27MSS, *et al.*, 2008 WL 818504, *4 (M.D. Fla. March 26, 2008) ("*Waxenberg II*") (denying motion to dismiss receiver's amended FUFTA claims against debtors because debtor's transfer of receivership entities' assets constituted transfer of "property of the debtor"); *Warfield v. Carnie*, Civil Action No. 3:04-cv-633-R, 2007 WL 1112591, *9 (N.D. Tex. 2007) ("A receiver of an alleged Ponzi scheme may sue under the UFTA to recover funds paid from the entity in a receivership"); *Quilling v. Cristell*, No. Civ.A. 304CV252, 2006 WL 316981, *6 (W.D. N.C. 2006) (finding "once Receiver was appointed, the [ponzi scheme entities] were freed from control of [the ponzi scheme operator] and the [entities] became entitled to the return of the funds that were wrongfully diverted to the Defendants ... Receiver, as receiver for all entities owned or controlled by [ponzi scheme operator] including the [ponzi scheme entities] properly has standing to bring fraudulent transfer claims that he is asserting against Defendants.").

Here, the complaint sufficiently pleads two causes of action arising from fraudulent transfers. Count I states a claim for actual fraud under Fla. Stat. § 726.105(1)(a) and count III

7

states a claim for both actual fraud under Fla. Stat. §726.105 and for constructive fraud under Fla. Stat. §726.106(1).[5] As Wiand notes in opposition to EFG's motion to dismiss, FUFTA allows a creditor to avoid a debtor's fraudulent "transfer" of property. FUFTA defines a "transfer" as "every mode direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat. § 726.102(12). An "asset" is defined as "property of the debtor" Fla. Stat. § 726.102(2). The allegations set forth that the funds transferred to investors such as EFG and D&E as part of Nadel's scheme, constitute "property of" Nadel under FUFTA. *See Waxenberg II,* 2008 WL 818504, *2-4; *Scholes, supra,* 56 F.3d at 754. Hence, upon review, I find that the allegations state FUFTA claims, and are pled with sufficient specificity to satisfy the notice pleading requirements of Rule 12(b)(6).[6]

---

[5] A transfer is fraudulent under a theory of constructive fraud if the transferor does not receive reasonable value in exchange and the transferor either (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the transferor were unreasonably small in relation to the business or transaction; (2) intended to, believed, or reasonably should have believed that he or she would incur debts beyond his or her ability to pay them as they became due; or (3) was insolvent at the time of the transfer. *See* Fla. Stat. §§ 726.105(1)(b)(1)-(2) and 726.106(1).

[6] I find EFG's argument that even if the Hedge Funds were creditors of Nadel there still was no transfer by debtors or of debtor's assets unavailing. *See Waxenburg II*, 2008 WL 818504, *1 ("noting that while the circumstances of equity receiverships like Waxenburg and this one "do not readily fit the typical fomulation of these claims[,] [n]onetheless ... this Court is ultimately persuaded that the [r]eceiver, who is not himself a typical litigant, has presented allegations sufficient to fulfill notice pleading requirements."). EFG also argues that the complaint is confusing and unplausible because it alleges in paragraph 33 that Nadel and each of the Hedge Funds were separate and distinct entities, but alleges in paragraphs 87-88 that the Hedge Funds were essentially an extension of Nadel such that the transfers made by the Hedge Funds were the equivalent of a transfer made by Nadel of his own assets. *See* doc. 33, p. 9. I find that the complaint properly states causes of action under FUFTA, and that EFG's paraphrase of paragraphs 87-88 is a misstatement. Paragraph 87 states: "Although investors' principal investment money was invested with one or more Hedge Funds in accordance with the pertinent

8

Finally, EFG posits that because Wiand is not a bankruptcy trustee and lacks the powers usually vested with a bankruptcy trustee, he lacks standing here. Specifically, EFG states that 11 U.S.C. §544(b) gives bankruptcy trustees the power to "avoid any transfer of an interest of the debtor in the property ... that is avoidable under applicable law by a creditor holding an unsecured claim." For the reasons stated above, however, I find that Wiand has standing to bring this action. *See also Freeman v. First Union Nat'l,* 329 F.3d 1231, 1234 (11th Cir. 2003) (noting that FUFTA is "much less circumscribed" than the fraudulent transfer provisions of the U.S. Bankruptcy Code).

For these reasons, I find Wiand has stated FUFTA claims and that he has standing to bring them against EFG and D&E and recommend the motion to dismiss the FUFTA claims be denied.

*b) alter ego theory*

Alternatively, EFG contends that the complaint, as pled, sets forth that the Hedge Funds were Nadel's *alter egos* and had no distinct corporate existence. Consequently, EFG posits that

---

investors' instructions, in actuality Nadel treated the Hedge Funds as a single source of money, and investors' money was commingled in the Hedge Funds' accounts." Likewise, paragraph 88 alleges:

> Nadel traded the money invested in the Hedge Funds in a pooled and commingled fashion through a single master trading account. Specifically, when trading, Nadel would pool all of the available money raised from investors and invested in the different Hedge Funds, along with money in his personal or other non-Hedge Fund accounts that he controlled (collectively, "Nadel's accounts"), in a single account and use it to purchase securities. Then, at the close of the trading session, Nadel allocated the completed trades as he wished among the accounts of the Hedge Funds and Nadel's accounts. Typically, Nadel allocated profitable trades to Nadel's accounts, including accounts in his name or in the name of Scoop Management or Scoop Capital, and unprofitable trades to the accounts of the Hedge Funds.

9

Wiand's attempt to artificially separate Nadel and the Hedge Funds, by using the shield of the "corporate form" as a sword in alleging that those entities are creditors of Nadel, fails. Upon consideration, however, and as Wiand acknowledges, the Eleventh Circuit "has at least implicitly, recognized that in a receivership proceeding, there need not be an artificial distinction between the property of a Ponzi scheme perpetrator and the property of his alter ego corporations used to perpetrate the scheme." *Waxenberg II,* 2008 WL 818504, *3 (citing *S.E.C. v. Elliott,* 953 F.2d 1560 (11th Cir. 1992)). Similar to the facts here, in *Waxenberg II*, the ponzi scheme perpetrator created, managed, and controlled the receivership entities, used them to effect a ponzi scheme, periodically transferred investors' money between those entities' accounts and his personal accounts, and misappropriated those entities' funds for personal expenses. *Id.* at *2; doc. 26, ¶¶ 24, 31, 38, 44, 50, 57, 64, 66, 68, 70, 72, 75, 77, 83, 82-93. Given this factual situation, the *Waxenberg II* court found that "[t]hese are classic allegations of an 'alter ego' relationship, based on which creditors may engage in 'reverse' piercing of a corporate veil." *Id.* at *3. As in *Waxenberg II,* I find that "[t]he Eleventh Circuit [has] indicated a willingness to allow a receiver to pursue a FUFTA claim under facts substantially similar to facts alleged here," that Wiand has established that Nadel operated each of the Hedge Funds as his *alter ego,* and that Wiand's FUFTA claims should not be dismissed. *Id.*

*c) mere conduit theory*

EFG next asserts that Wiand's claims should be dismissed because EFG was a "mere conduit" for the redemption, and not a "transferee" within the meaning of FUFTA or an entity that was unjustly enriched. More particularly, EFG states that it received funds on behalf of its banking customer and not for its own benefit, and as a mere conduit, it should not be subject to

liability for fraudulent transfers. EFG explains that in the ordinary course of its private banking business, EFG's customers direct it to purchase investments on their behalf and for their sole account. EFG contends that its customers bear sole risk for these transactions and are reflected as the owner of the particular investment in the books and records of the bank. Under this arrangement, EFG, as nominee owner holding the beneficial interests for its customer, is listed on Viking's books as the nominee holder of its customer's Viking investments. According to EFG, per the common terminology in the securities industry, EFG's customer's investments in the Viking were held in "street name" meaning that EFG technically held the investments in its name and not in the name of its individual customer. EFG, however, kept records showing the individual customer as the real or beneficial owner. EFG acknowledges that "[t]he investment in the Viking Fund was made on behalf of, and held in the name of, a beneficial owner, the identity of which EFG cannot disclose under Swiss law without an order from a Swiss court. ... Although the Complaint alleges that Defendant [D&E] is a customer of EFG and that D&E received some or all of the alleged fraudulent transfers, EFG can neither confirm nor deny whether D&E is or was a customer of EFG without an order from a Swiss court directing it to release that information." *See* doc. 33, p.3 n.3, p.16.

In response, Wiand asserts that the "mere conduit" argument presents an affirmative defense, inappropriate for resolution upon a motion to dismiss because resolution would necessarily require presentation of extraneous information regarding the precise relationship between EFG and its customer, and the rights and interests of both. *See Steinberg v. Alpha Fifth Group,* 2010 WL 1332844, *3 (S.D. Fla. March 30, 2010) (denying motion to dismiss where receiver made sufficient factual allegations regarding his standing as a creditor under FUFTA and

stating that the issue of whether the receiver truly qualifies as a creditor is a question of fact to be reserved for summary judgment or trial). The mere conduit defense requires EFG to show that it did not have control over the assets received due to the fact that it was merely a conduit of assets actually controlled by the debtor- transferor and that it acted in good faith as an innocent participant in the fraudulent transfer. *See In re Harwell*, 628 F.3d 1312, 1323 (11th Cir. 2010); *Perlman v, Delisfort-Theodule,* 2010 WL 4514249, *2 (S.D. Fla. November 2, 2010). Moreover, the complaint alleges that Nadel caused the Hedge Funds to make improper transfers to the defendants, and EFG admits that it held the Viking investment in its name. Accordingly, at this juncture, I find dismissal inappropriate.

*d) in pari delicto defense*

Finally, EFG argues Wiand's claims are barred by the *in pari delicto* defense. The doctrine of *in pari delicto* "derives from the Latin, *in pari delicto potior est conditio defendentis*" meaning "in a case of equal or mutual fault...the position of the [defending] party ... is the better one." *In re Leli,* 425 B.R. 673, 678 (M.D. Fla. 2010) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 306 (1985)). EFG posits that because the complaint alleges the fraud perpetrated by the Hedge Funds on their investors, the doctrine of *in pari delicto* provides EFG with a complete defense to Wiand's FUFTA and unjust enrichment claims. Citing to *Scholes,* Wiand explains, however, that "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Scholes, supra,* 56 F.3d at 754-55. Once the corporations created and initially controlled by the ponzi scheme operator are controlled by the receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors, there is no legal or practical objection to the receiver's bringing suit

12

to recover corporate assets unlawfully dissipated by the ponzi scheme operator. *Id. See also Freeman v. Dean Whitter Reynolds,* 865 So. 2d 543, 550 (Fla. 2d DCA 2003) ("[w]e are inclined to believe that the receiver may also pursue certain claims ... [including claims] that the corporation, which has been cleansed through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership ... that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership"). Determining the application of *in pari delicto* requires a court to make a factual inquiry to determine, among other issues, "whether plaintiffs guilt is far less in degree than defendant's, so as to make the doctrine inapplicable." *See In re Wiand,* 2007 WL 963165, *7 (M.D. Fla. March 27, 2007) citing *Turner v. Anderson,* 704 So. 2d 748, 750 (Fla. 4th DCA 1998) (finding that if the plaintiff's guilt is not far less, the court inquires if applying the doctrine would be contrary to public policy); *Steinberg, supra,* 2010 WL 1332844, *4 (finding *in pari delicto* is an affirmative defense that is not appropriately considered upon a motion to dismiss). In *Wiand*, this court found that confining its analysis to the allegations in the complaint, it was unable to determine the relative fault of the parties, and concluded that "the defense of *in pari delicto* not apparent from the face of the complaint." *Id.* Hence, I find consideration of the *in pari delicto* doctrine inappropriate at this juncture.

*e) Rule 9(b)*

EFG asserts that the FUFTA claims are devoid of the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

13

other conditions of a person's mind may be alleged generally." Courts relax Rule 9(b)'s heightened pleading requirement for plaintiffs who are trustees or receivers who are "third party outsiders to the fraudulent transactions" with only second-hand knowledge of the fraudulent acts. *See generally David M. Levine v. Walter Shacklett, et al.*, case no. 8:04-CV-1164-T-24EAJ (M.D. Fla. Feb. 4, 2005) (doc. 82, pp. 7-8) (order denying motion to dismiss due to lack of specificity and applying "more lenient pleading standard" to fraudulent transfer claims); *Perlman v. Five Corners Investors I,* 2010 WL 962953, *4 (S.D. Fla. March 15, 2010) ("A fraudulent transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. As a result, Rule 9(b)'s heightened pleading standard does not apply to claims brought under FUFTA."); *Steinberg v. A Analyst Limited et al.,* 2009 WL 806780, *11-12 (S.D. Fla. March 26, 2009) (recognizing that Rule 9(b) should not be applied to cases where violations of FUFTA are asserted because unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction and there for the plaintiff generally possesses little or no information about the alleged fraudulent transfer). *See also In re Bernard Madoff Inv. v. Securities LLC*, 445 B.R. 206, 219 (S.D.N.Y. 2011) (finding trustee adequately pled claim to recover fraudulent transfers from subsequent transferee and that court only need apply a rule 8 analysis). Accordingly, I find Rule 9(b)'s heightened pleading requirement inapplicable to Wiand's claims to avoid fraudulent transfers. Moreover, as already discussed, I find that the complaint adequately states claims, including allegations showing that Wiand is entitled to relief, satisfying Rule 8's pleading requirements.

2. *Unjust enrichment*

    a) *Rule 12(b)(6)*

EFG argues that the facts as pled by Wiand fail to establish the requisite elements of unjust enrichment: 1) that the Hedge Funds conferred a benefit on EFG; 2) that EFG had knowledge of the benefit; 3) that EFG accepted or retained the benefit conferred; and 4) that circumstances are such that it would be inequitable for EFG to retain the benefit without paying fair value for it. *See American Safety Ins. Serv., Inc. v. Griggs,* 959 So .2d 322, 331 (Fla. 5th DCA 2007). EFG asserts that Wiand's allegations are "conclusory" and the Hedge Funds that made the transfers to EFG cannot now allege that they suffered an inequitable harm as a result of their own voluntary transfers. In other words, EFG asserts Wiand may not pursue claims for unjust enrichment that are in reality owned by the investors in the Hedge Funds. As set forth above, however, in a ponzi scheme, the ponzi scheme operator removes assets from the receivership entities for an unauthorized purpose, and thus, injures the entities. *See Scholes, supra,* 56 F.3d at 754. When the ponzi scheme operator fraudulently transfers funds from an entity underlying the scheme to a third party, the entity itself is injured, separate and apart from the injury to the entity's investors. *See, e.g., Zayed v. Buysse,* No. 11-CV-1042 (SRN/FLN), 2011 WL 2160276, *5 (D. Minn. June 1, 2011) (finding receiver had standing to bring unjust enrichment and fraudulent transfer claims against investors because "the receivership entities were also victims of the fraud and are, like the defrauded investors, tort creditors of Cook's Ponzi scheme"); *Steinberg ex rel Lancer Management Group LLC v. Alpha Fifth Group,* No. 04-60899-CIV, 2010 WL 1332840, *4 (S.D. Fla. 2010) (finding receiver of newly "cleansed" receivership entities stated claim for undue enrichment because he could assert claims against

15

"evil zombie" management company which wrongfully dissipated funds from receivership entities); *Wing v. Hammons,* No. 2:08-cv-00620, 2009 WL 1362389, *3 (D. Utah May 14, 2009) (denying motion to dismiss receiver's unjust enrichment claim against "winners" of ponzi scheme for lack of standing because "entities were injured when [ponzi scheme operator] used them to commit fraud and waste. Once [ponzi scheme operator] was removed from the scene, those entities, now under auspices of the Receiver, are entitled to seek the return of these fraudulently dissipated payments.").

Here, Wiand alleges that when investors, such as EFG and D&E, received distributions of funds from Nadel's ponzi scheme, the investors received a portion of the other investors' commingled funds, pushing the underlying entities deeper into insolvency (doc. 26, ¶¶18-20, 82-110). Wiand asserts that the harm to the Hedge Funds is evident when investors, like EFG and D&E, receive distributions from the ponzi scheme that are greater than the amounts invested. Other courts have recognized that a ponzi scheme is insolvent from its inception, and becomes increasingly insolvent as the scheme progresses. *See Cunningham v. Brown,* 265 U.S. 1, 8 (1924) (stating that due to the nature of his scheme, Charles Ponzi "was always insolvent, and became daily more so, the more his business succeeded"); *In re Financial Fed. Title & Trust, Inc.,* 309 F.3d 1325, 1332 (11th Cir. 2002) (noting that by definition a ponzi scheme is driven further into insolvency with each transaction); *Warfield v. Byron,* 436 F.3d 551, 558 (5th Cir. 2006) ("a Ponzi scheme ... is, as a matter of law, insolvent from its inception.")*; In re ATM Financial Services, Inc.,* Bankruptcy No. 6:08-bk-969-KSJ, 2011 WL 2580763, *6 (M.D. Fla. June 24, 2011) ("there is little debate that a company run as a Ponzi scheme is insolvent as a matter of law"). Upon consideration, I find that Wiand has stated a claim for unjust enrichment,

and recommend EFG's motion be denied in this regard.

*b) adequate remedy at law*

EFG also argues that Wiand cannot state a claim for unjust enrichment because he has an adequate remedy at law. Specifically, EFG states that there is a legal contract, the Viking Fund Subscription Agreement, that governs the terms of the relationship between the investors and the Viking Fund. Upon consideration, I find that EFG's cursory reference to the Viking Fund Subscription Agreement does not establish the existence of an express written contract between Viking and EFG or D&E. EFG asserts only that the "Viking Fund Subscription Agreement was incorporated by reference through the Receiver's allegations that the Defendants made investments in one or more Hedge Funds," but it is unknown whether either EFG or D&E are parties to this document, tor whether the document is signed or otherwise executed, or enforceable. Hence, at this early juncture the claim should stand. Besides, alternative pleading is permitted by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or different types of relief"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"); *Court-appointed Receiver of Lancer Management Group LLC v. Lauer,* 2008 WL 906274, *6 (S.D. Fla. 2008) ("Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature"); *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) (Federal Rules of Civil Procedure "do not prohibit the pleading of an equitable remedy alongside a claim for monetary remedy ... Although the equitable relief ultimately may not be awarded where there exists an adequate remedy at law, the [receiver] certainly may plead alternative equitable relief.").

### c) return of principal investment

Finally, EFG argues that dismissal of counts I and II, the causes of action seeking to avoid/return of *all* transfers, not just the profits, is appropriate because Wiand cannot establish that EFG, on behalf of its customer, provided less than reasonably equivalent value. To that effect, EFG asserts that EFG was entitled, on behalf of its customer, to recover the principal funds it invested in the Hedge Funds years earlier, and that the Hedge Funds received reasonably equivalent value to the extent that the amount of the principal transferred back to EFG was equivalent to the amount EFG invested. EFG states that the fact that the Hedge Funds and Nadel may have engaged in fraud does not eliminate the value of EFG's investments on behalf of its customer. Wiand's claim in count I arises from Fla. Stat. § 726.105(1)(a). Section 726.109 provides an affirmative defense if EFG can establish both that it "took in good faith and for a reasonably equivalent value." EFG relies on this affirmative defense, but such a defense has no relevance to the sufficiency of Wiand's claims and is inappropriate for consideration at the motion to dismiss stage. Moreover, as Wiand asserts, count I alleges that EFG is a sophisticated investor that cannot show it acted "in good faith" in light of the "red flags." *See* complaint, doc. 26, ¶¶ 107-110, 111-117. Again, as Wiand points out, EFG has not attempted to show that it acted "in good faith" and in any event, it is premature to decide such an issue upon a motion to dismiss. *See Wiand v. Waxenberg*, 611 F.Supp. 2d 1319, 1320 (M.D. Fla. March 19, 2009) ("good faith presents a classic issue for the trier of fact.")

EFG also argues that Wiand's unjust enrichment claim in count II seeking return of the principal investments fails because it was not unjustly enriched to the extent that the transfers it received were the same value as the initial investments. This argument, however, falls flat in

light of the framework of a ponzi scheme such as the one described in Wiand's complaint. The complaint alleges that EFG and D&E's principal investments were commingled with other investors' funds, and at least in part, lost by Nadel in his unsuccessful ponzi scheme via both trading and payments to other investors of purported gains. When investors requested redemptions of their principal investments, Nadel, in furtherance of his scheme, intentionally and wrongfully caused the Hedge Funds to pay requesting investors sums of money equivalent to all or part of the principal invested by those investors. Such distributions which Nadel caused the Hedge Funds to make to investors were paid from the fruits of the scheme, and were not distributions of actual gains or of the recipient's principal investments. *See* complaint, doc. 26, ¶¶94-103. The complaint further alleges that EFG and D&E were sophisticated investors who received purported trading games and/or purported redemptions in an amount which exceeded the principal investment, and that all money Nadel wrongfully caused the Hedge Funds to transfer or pay to EFG and D&E was diverted and misappropriated by Nadel in furtherance of his scheme. While Defendants profited from their investment in Hedge Funds by $1,098,676.49, many other investors in the Hedge Funds lost money. *See* complaint, doc. 26, ¶¶104, 110. Upon consideration, I find that Wiand has stated a claim for unjust enrichment in count II.

        *d) in pari delicto defense*

For the same reasons stated with regard to the FUFTA claims, I find the *in pari delicto* defense inappropriate for consideration as to the unjust enrichment claims at the motion to dismiss stage.

    D. *Conclusion*

    For the foregoing reasons, it is hereby

RECOMMENDED:

1. EFG's Motion to Dismiss Second Amended Complaint (doc. 33) be DENIED.

IT IS SO REPORTED at Tampa, Florida on February 8, 2012.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Hon. Elizabeth A. Kovachevich
     Counsel of Record